[No. A142299. First Dist., Div. One. Dec. 16, 2015.]

In re M.L., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
M.L., Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part III.B.–D.

**COUNSEL**

Violet Elizabeth Grayson, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Jeffrey M. Laurence, Acting Assistant Attorney General, Huy Luong and Joan Killeen, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

BANKE, J.—

## I. INTRODUCTION

We affirm the disposition order committing minor M.L. to the Department of Corrections and Rehabilitation, Division of Juvenile Facilities (DJF), for a maximum term of six years.

Despite the acknowledged near-absurdity of the rule, our Legislature and Supreme Court mandate that a minor is only eligible for DJF if the minor's "most recent offense" alleged in a Welfare and Institutions Code section 602 petition is DJF eligible. In this case, the minor was found to have committed a robbery, which, standing alone, would unquestionably expose him to a DJF commitment. This minor, however, was also found to have committed an additional offense, gun possession, overlapping in time with the robbery. Gun possession is not a DJF-eligible offense.

■ We conclude the "most recent offense" rule does not bar a DJF commitment in this case. First, the possession offense arguably occurred before, but not after, the robbery. Second, even if the offenses were essentially simultaneous, the "most recent offense" rule does not eliminate the juvenile court's discretion to impose a DJF commitment if a minor is currently violent. We further conclude the juvenile court did not abuse its discretion in selecting DJF for this minor and that trial counsel did not render ineffective assistance by not arguing for a reduced maximum commitment term. We do, however, order the trial court to correct a conceded clerical error in its commitment order.

## II. BACKGROUND

Like both parties, we draw a description of the minor's crimes from the probation department's April 8, 2014 report.

A male and female were sitting in a parked vehicle. The minor approached, banged his knuckles on the driver's side window, and, using coarse language, demanded the male open the door. The male saw a silver gun in the minor's right hand. The female saw the minor was armed. She perceived the minor was not "playing around." The minor then demanded the pair produce their wallets and cell phones. The victims complied, handing over their belongings, including the female's purse. The minor exclaimed "West Pittsburg Nigga" and fled the scene.

The victims contacted the police with a description of the minor and his getaway car. Police quickly located and stopped the car, which was driving evasively, and contacted the minor and a friend. These two were placed in a police car. While there, the minor saw the police talking to the man he had "hit." The minor told his friend "it's over," that he had used a loaded gun, and so might "get an armed robbery" and have to go away. The female victim was able to identify the minor as the assailant and both victims identified their property.

A petition under Welfare and Institutions Code section 602 alleged two counts, one per victim, of robbery (Pen. Code, §§ 211, 212.5, subd. (c)) with enhancements for personal use of a firearm (Pen. Code, § 12022.53, subd. (b)), and one count of a minor possessing a firearm capable of being concealed (Pen. Code, § 29610).

The minor admitted one robbery charge with a modified enhancement (arming under Pen. Code, § 12022, subd. (a)(1), rather than personal use) and admitted the possession charge. The petition was sustained as to those counts and otherwise dismissed.

The disposition hearing spanned three days over a period of a month. The juvenile court struggled with whether it had authority to commit the minor to DJF. Probation initially recommended a DJF commitment. Then, after the juvenile court tentatively decided the minor was ineligible, probation recommended a commitment to the youthful offender treatment program. Ultimately, the juvenile court decided the minor was eligible for DJF and committed the minor there for a maximum term of six years on the robbery charge, staying an additional period of eight months on the possession charge under Penal Code section 654.[1] On the commitment order, the juvenile court indicated that in determining this maximum period of confinement, which was the same length of term an adult might receive, the juvenile court had "considered the individual facts and circumstances of the case."

The minor timely appealed.

### III. Discussion

#### A. *Eligibility for Commitment to Department of Juvenile Justice*

"One of the primary objectives of juvenile court law is rehabilitation, and the statutory scheme contemplates a progressively more restrictive and

---

[1] "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision. An acquittal or conviction and sentence under any one bars a prosecution for the same act or omission under any other." (Pen. Code, § 654, subd. (a).)

punitive series of dispositions starting with home placement under supervision, and progressing to foster home placement, placement in a local treatment facility, and finally placement at the [DJF]." (*In re M.S.* (2009) 174 Cal.App.4th 1241, 1250 [95 Cal.Rptr.3d 273].)[2]

A DJF commitment is barred in this case, asserts the minor, under the "most recent offense" rule of Welfare and Institutions Code section 733, subdivision (c).

■ Section 733 (unspecified statutory references are to the Welfare and Institutions Code) prohibits a DJF commitment when a minor "has been or is adjudged a ward of the court pursuant to Section 602, and the most recent offense alleged in any petition and admitted or found to be true by the court is not described in subdivision (b) of Section 707." Section 707 lists numerous serious offenses including robbery, but not gun possession. (Welf. & Inst. Code, §§ 733, subd. (c), 707, subd. (b)(3).)

■ Our Supreme Court has recently considered how troubling and bizarre a literal interpretation of the "most recent offense" language of section 733 would be, yet determined a literal interpretation was compelled in light of the statute's lack of ambiguity. (*In re D.B.* (2014) 58 Cal.4th 941, 947–948 [169 Cal.Rptr.3d 672, 320 P.3d 1136] (*D.B.*).) Therefore, when "a minor has committed a series of crimes, the court's ability to impose a DJF commitment depends *entirely* on the type of offense the minor *happened* to commit last." (*Id.* at p. 947, italics added.) This suggests " '[a] minor who commits a string of violent acts would be immunized from a DJF commitment if the crime spree happened to end with a nonqualifying offense' " and this "reward[s] a minor for committing *more* crimes." (*Ibid.*) Moreover, "because section 733(c) examines only the last offense committed" not the entire slate of committed offenses enumerated in the latest petition, "the statute will sometimes require that currently violent offenders and sex offenders be placed in local settings with juveniles whose offenses are far less serious." (*Id.* at pp. 947–948.) These results, said the Supreme Court, were troubling, but not absurd. (*Id.* at p. 948.)

Thankfully, this case does not require us to take another step toward troubling results or absurdity.

The minor claims his possession charge, concededly not a DJF-eligible offense, occurred last in time and continued after the robbery, thus rendering his robbery charge irrelevant for disposition purposes. We do not accept the minor's premise.

---

[2] DJF was formerly the California Youth Authority (CYA). A 2005 statute made the name change. (Welf. & Inst. Code, §§ 202, subd. (e)(5), 1000, 1703, subd. (c), & 1710, subd. (a).) We use the name DJF uniformly, even when referring to older cases and statutes.

■ First, the minor's gun possession necessarily began *before* the robbery. The two crimes ended at the same time, shortly after the taking, when the police stopped the minor and his friend, who had been driving evasively, and located the gun and the victims' property. As our Supreme Court has held, while a defendant becomes guilty of robbery after the slightest movement of a victim's property, "the crime of robbery continues 'as long as the loot is being carried away to a place of temporary safety.' " (*People v. Navarette* (2003) 30 Cal.4th 458, 502 [133 Cal.Rptr.2d 89, 66 P.3d 1182].) While driving evasively shortly after the taking, the robbery was still ongoing. Under these circumstances, we could conclude the robbery was the "most recent offense"; in any case, there is no way we could conclude the possession offense occurred last.

■ At best, we might view the offenses as part of a single transaction. Indeed, the juvenile court, in light of the robbery charge, suspended imposition of sentence on the possession charge under Penal Code section 654, subdivision (a), which applies only when a single "act . . . is punishable in different ways by different provisions of law." Such a determination does not bar a DJF commitment under Welfare and Institutions Code section 733.

■ Section 733 was enacted to address budget concerns related to DJF by reducing "the number of juvenile offenders housed in state facilities." (*D.B., supra*, 58 Cal.4th at p. 948; see *In re Greg F.* (2012) 55 Cal.4th 393, 409 [146 Cal.Rptr.3d 272, 283 P.3d 1160].) It was meant to divert from DJF those youthful offenders adjudicated for nonviolent, nonserious offenses. (*In re Greg F., supra*, 55 Cal.4th at p. 409.) There was also a belief that " 'most counties' " provided rehabilitative services " 'better and for less cost' " than the state, especially for less serious offenders. (*Ibid.*)

The legislative history also "consistently stresses," however, "that only wards *who are not currently violent* will be diverted from state to local responsibility." (*In re Greg F., supra*, 55 Cal.4th at p. 410, italics added.) "[I]t is clear that the Legislature intended to preserve the possibility of DJF commitments for violent offenders and sex offenders. In keeping with this clear legislative intent, it is not reasonable to interpret the realignment legislation as restricting the juvenile court's ability to order an appropriate disposition for such offenders. Nothing in the legislative history surrounding the enactment of section 733(c) suggests the Legislature intended to strip juvenile courts of their long-held discretion" in such matters. (*Ibid.*)

■ If a minor commits a violent DJF-eligible offense and a noneligible offense at the same time, there can be no question the minor is "currently violent" and the juvenile court should have discretion to select DJF. (*In re Greg F., supra*, 55 Cal.4th at p. 410.) This is a reasonable reading of section

733's "most recent offense" requirement, one that accounts for the statute's legislative history and the history of juvenile court discretion. A contrary reading of section 733 is not required by its text. It would also be unreasonable. It would, defying all logic and expectations, permit a DJF commitment for a robber or other violent offender only if he or she does *not* also concurrently commit a secondary, compounding offense.

For all these reasons, the minor was eligible for a DJF commitment despite section 733.

B.–D.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## IV. Disposition

The disposition order is affirmed, but the juvenile court shall correct the commitment order to reflect a six-year maximum term. The juvenile court shall deliver the corrected order to DJF and any other pertinent person or entity.

Humes, P. J., and Margulies, J., concurred.

---

*See footnote, *ante*, page 21.